**IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PINELLAS COUNTY, FLORIDA**

**PAUL BECKEL,**

    Plaintiff,

vs.                                              Case No.:

**MARY A. MCGINN,**

    Defendant.

_____/

**COMPLAINT**

Plaintiff, PAUL BECKEL ("Beckel"), by and through his undersigned attorney, sues MARY A. MCGINN ("McGinn") and alleges:

**PARTIES, JURISDICTION & VENUE**

1. This is an action for damages that exceed $30,000.00, exclusive of attorneys' fees, interest, and costs.

2. At all times material hereto, Beckel has been a resident of Manatee County, Florida.

3. At all times material hereto, McGinn has been a resident of Pinellas County, Florida.

4. At all times material hereto, Beckel and McGinn have been employees of The Department of Veteran Affairs ("VA"). During the incident described herein, Beckel was employed as a Mental Health Registered Nurse and McGinn as a physician with the job title Chief of Primary Care.

***ELECTRONICALLY FILED 06/07/2022 01:55:41 PM: KEN BURKE, CLERK OF THE CIRCUIT COURT, PINELLAS COUNTY***

5. Venue is proper in this Court pursuant to Section 47.011, Florida Statutes because the facts giving rise to the causes of action stated herein occurred in Pinellas County, FL, and/or the Defendant resides in Pinellas County, Florida.

6. Any and all conditions precedent to this action have been satisfied or waived.

7. The Plaintiff has retained the undersigned law firm to represent him in this action and is obligated to pay a reasonable fee for bringing this action.

## BACKGROUND & GENERAL ALLEGATIONS

8. At all times material to this dispute, the VA was on notice that Beckel was an employee with a disability, a 100% Protected, Service-Connected Veteran, and a patient of the VA. Further, during his tenure at the VA, Beckel never performed his job duties while impaired, nor has he been disciplined for allegedly attempting to perform his work while impaired.

9. Through the VA, Beckel received medical diagnosis and treatment for various medical conditions. For these conditions, Beckel is treated with both therapy and medication- including a managed pain medication.

10. As both a patient and employee of the VA, Beckel discovered that his medical records were being displayed on a certain CPRS Coversheet of his employee account that was accessed by his coworkers without his consent.

11. Beckel reached out to a VA Privacy Officer to protect his medical privacy, especially in relation to his prescribed pain medication due to the potential negative stigma that it carries.

12. The VA Privacy Officer advised that Beckel's primary care physician hold off on inputting the prescription pain medication into Beckel's chart until speaking with the VA's Chief of Primary Care.

13. Beckel's primary care physician initiated correspondence with McGinn via email on or around April 17, 2020 concerning Beckel's privacy.

14. Upon receipt of the correspondence, McGinn ran an Electronic-Florida Online Reporting of Controlled Substance Evaluation Program (E-FORSCE) report on Beckel's CPRS record on that same day.

15. McGinn made statements that Beckel was unfit to continue his employment with the VA due to his use of certain medication. At the time McGinn made the statements, she had no personal knowledge as to Beckel's capacity to continue serving in his employment position. McGinn had not medically assessed or treated Beckel.

16. McGinn shared the report with outside agencies including the Florida Highway Safety and Motor Vehicles (FLHSMV) and the Florida Department of Health (DOH).

17. On or around April 29, 2020, Beckel received a letter from FLHSMV stating that they received information from the VA providing that he may have a medical and mental health condition that may make him unsafe to drive.

18. Beckel hired his previous, non-VA medical provider to submit documentation supporting his claims against impairment; however, he was not medically cleared to drive by the FLSMV until July 2, 2020.

19. Beckel was informed that he would be required to retake an extended driver's test and motorcycle safety class as a stipulation for reissuing his license. Eventually, Beckel reapproved to drive.

20. On or around May 13, 2020, The Intervention Project for Nurses (IPN) contacted Beckel via email offering aid after their organization received word of a complaint filed by McGinn with the DOH on or around May 5, 2020.

21. Beckel received a notice from the DOH of receipt of McGinn's report and the organization's concurring investigation on or around May 18, 2020

22. The DOH conducted a Probable Cause Panel for the Board of Nursing to consider the complaint on or around August 24, 2020. The Panel determined no probable cause of the violation and closed the case.

23. Accordingly with VA procedure, Beckel filed a complaint for McGinn's actions of breaking chain of command, VA protocol, and filing false, unsubstantiated complaints against him.

24. Beckel received a letter on June 11, 2020 from the VA CWY Director/Privacy Officer confirming McGinn's violations of his HIPAA rights by sharing his personal health information to outside agencies without his knowledge or consent.

25. Engaging in no investigation of or conversation with the patient/employee, and with no evidence of abuse or impairment with the medication's use, McGinn violated HIPAA law and the VA chain of command when she shared Beckel's protected healthcare information with individuals at the VA and outside agencies including the Florida Highway Safety and Motor Vehicles (FLHSMV) and the Florida Department of Health (DOH).

26. As a result of McGinn's misconduct toward Beckel, she was demoted from her supervisory position.

27. At all times material hereto, Beckel merely sought to protect private health information; however, McGinn made it her objective to not only ensure that didn't happen, but she also aggressively attacked Beckel's livelihood without justification.

28. The conduct of McGinn toward Beckel goes beyond all bounds of professionalism, ethics, and decency and should be regarded as utterly intolerable in a civilized community.

## COUNT I – Malicious Prosecution

29. Beckel realleges paragraphs 1 through 28 as above as though fully set forth within.

30. McGinn published Beckel's private protected health information to third parties including Beckel's co-workers and individuals working with regulatory agencies.

31. The private information published by McGinn was offensive in that it involved the release of information relating to medication taken by Beckel and an assertion that he was impaired due to the medication.

32. Beckel's private protected health information is not of public nature and the public dissemination of that information was an invasion of Beckel's privacy.

33. McGinn's publication of Beckel's private protected health information caused him to sustain damages including but not limited to damage to his reputation, worry, fear, distress, frustration, embarrassment, costs, and attorneys' fees.

WHEREFORE, Beckel demands judgment against McGinn for monetary damages, court costs and such other relief as allowable by law and/or that this Court deems just.

## COUNT II – Defamation Per Se

34. Beckel realleges paragraphs 1 through 28 as above as though fully set forth within.

35. McGinn published false statements about Beckel by informing his co-workers and personnel of regulatory agencies that he was impaired due to his use of medications that were prescribed to him by his physician.

36. At the time McGinn published the false statements about Beckel, she knew or should have known they were false, as she is a physician and had not clinically observed any signs of medical impairment by Beckel.

37. McGinn acted negligently, recklessly, or intentionally in publishing false statements about Beckel's capacity to perform his livelihood.

38. McGinn's statements are defamatory and resulted in damages to Beckel.

39. Because McGinn's statements were of the type that tend to subject an individual to hatred, distrust, ridicule, contempt or disgrace and/or tend to injure one in his trade or profession, they constitute defamation per se and damages are presumed.

WHEREFORE, Beckel demands judgment against McGinn for monetary damages, court costs and such other relief as allowable by law and/or that this Court deems just.

**Attorney's Fees Demand:** Beckel demands attorney's fees on all counts of this Complaint should they become awardable under Rule 1.442, Fla. R. Civ. P. and/or Section 768.79, Fla. Stat.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES TRIABLE BY JURY.**

                                  **THE CAHALL LAW FIRM, PLLC**
                                  1215 Manatee Ave W, Ste. 106
                                  Bradenton, Florida 34205
                                  P: (941) 281-2019

                                    */s/ Don Cahall*
                                  _____
                                  **Don R. Cahall**
                                  Florida Bar No. 0110578
                                  E-mail: don@cahalllawfirm.com
                                  *Attorney for the Plaintiff*